UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC WATCHDOGS, a California 501(c)(3) corporation,<br><br>                                    Plaintiff,<br><br>v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY; SAN DIEGO GAS & ELECTRIC COMPANY; SEMPRA ENERGY; HOLTEC INTERNATIONAL; UNITED STATES NUCLEAR REGULATORY COMMISSION; and DOES 1 through 100,<br><br>                                    Defendants. | Case No.:  19-CV-1635 JLS (MSB)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTIONS TO DISMISS, (2) DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH PREJUDICE, AND (3) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>(ECF Nos. 2, 5, 41, 42, 47) |

Presently before the Court are Plaintiff Public Watchdogs' Amended Motion for Preliminary Injunction and Temporary Restraining Order ("Mot. for Prelim. Inj.," ECF No. 5) and the Motions to Dismiss filed by Defendants Holtec International, Inc. ("Holtec") ("Holtec MTD," ECF No. 41); Southern California Edison Company ("SCE"), San Diego Gas & Electric Company ("SDG&E"), and Sempra Energy ("Sempra") (together, the "Utility Defendants"; with Holtec, the "Private Defendants") ("Utility MTD," ECF No. 42); and the United States Nuclear Regulatory Commission ("NRC") ("NRC MTD," ECF

No. 47). The Court heard oral argument on November 25, 2019. *See* ECF Nos. 58, 59. Having considered the Parties' arguments and the law, the Court **GRANTS** Defendants' Motions to Dismiss, **DISMISSES WITH PREJUDICE** Plaintiff's First Amended Complaint, and **DENIES** Plaintiff's Motion for Preliminary Injunction, as follows.

## BACKGROUND[1]

### I.    Plaintiff's Allegations

Plaintiff "is a 501(c)(3) non-profit corporation that advocates for public safety by ensuring that government agencies and special interests comply with all applicable laws, including public-safety and environmental protection laws, especially in the public-utilities industry." FAC ¶ 4. "Plaintiff has at least one member who lives within the zone of exposure to a catastrophic release of radioactive material from SONGS." *Id.*

SCE and SDG&E are public utilities doing business in California. *Id.* ¶¶ 5–6. Sempra is the parent company of SDG&E. *Id.* ¶ 7.

In August 1963, Congress enacted Public Law 88-82, which authorized the "construct[ion], operate[ion], maintain[enance], and use" of a nuclear power plant on the Camp Pendleton military base. *Id.* ¶ 18. The Utility Defendants operated three nuclear electric generating units in that area—which is located within a tsunami inundation zone and between two active fault lines, *see id.* ¶¶ 1, 48—at the San Onofre Nuclear Generating Station ("SONGS"). *Id.* ¶ 19. SCE owned 78.2% of SONGS, *id.* ¶ 5, while SDG&E owned approximately 20% of SONGS. *Id.* ¶ 6. The first nuclear generating unit at SONGS operated between 1968 and 1992, while the second and third units operated from 1983 and 1984, respectively, until June 12, 2013, when they were shut down. *Id.*

_____

[1] The facts alleged in Plaintiff's First Amended Complaint ("FAC") are accepted as true for purposes of the Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true"). The Court also considers those materials outside the First Amended Complaint that are proper subjects of judicial notice, such as other court and administrative filings. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2615 (2019).

Plaintiff alleges that, throughout this time, "SONGS has had numerous instances of poor safety and regulatory compliance." *Id.* ¶ 20; *see also id.* ¶¶ 21–28. These led to the announcement on June 7, 2013, that SONGS would be permanently shut down. *Id.* ¶ 29. The Utility Defendants permanently ceased operation of SONGS Units 2 and 3 on June 12, 2013. *Id.* ¶ 41. Plaintiff contends, however, that issues of mismanagement have continued to plague the decommissioning process, which has led to "a continuing liability and an ever-present existential threat." *See id.* ¶ 30.

For example, the NRC—which is "federal government agency that is mandated by Congress to license and regulate the Nation's civilian use of radioactive materials to protect public health and safety, promote the common defense and security, and protect the environment," *id.* ¶ 10—"has repeatedly failed to exercise any meaningful oversight of SONGS and has abdicated its role to regulate [the Private Defendants]." *Id.* ¶ 32. The NRC has declined to perform an independent seismic hazard assessment of SONGS, *see id.* ¶ 33, and has frequently allowed the Utility Defendants to violate NRC rules and regulations. *See id.* ¶¶ 34–36. The NRC also has granted several exemptions to the Utility Defendants from the emergency response regulations, *see id.* ¶¶ 37–38, and allowed the Utility Defendants to use the $4.7 billion decommissioning trust fund for purposes other than decommissioning activities. *See id.* ¶ 39. Finally, the NRC granted the Utility Defendants a license amendment on July 17, 2015 (the "July 2015 License Amendment"), which permitted them to decommission the SONGS facility. *See id.* ¶ 43. In granting the July 2015 License Amendment, however, the NRC "relied on the [Utility] Defendants' own analysis instead of objective criteria or independent analysis." *Id.*

Although the Utility Defendants previously had stored spent nuclear fuel ("SNF") at SONGS in wet storage pools, *see id.* ¶ 45, the Utility Defendants' decommissioning plan allows for the burial of SNF in an onsite containment system called an Independent Spent Fuel Storage Installation ("ISFSI"). *Id.* ¶ 48. The ISFSI is located in a tsunami inundation zone located between two seismic fault lines and only 108 feet from the Pacific Ocean. *See id.* ¶ 48. Consequently, the ISFSI "is only about 18 feet above the Pacific Ocean's median

high tide," and "[t]he bottom of the structure is a mere three feet above the underground water table." *Id.* ¶ 49. Accordingly, "[c]limate-change experts predict that the bottom of each silo located in the ISFSI will be inundated with salt water as early as 2035." *Id.* ¶ 51.

Designed by Holtec, *id.* ¶ 52, and guaranteed only for ten years, *id.* ¶ 55, the ISFSI calls for the burial of 73 canisters filled with 3.6 million pounds of SNF, *see id.* ¶¶ 49, 54, approximately 20 feet underground. *See id.* ¶ 48. Like the ISFSI itself, the canisters were designed and manufactured by Holtec, *id.* ¶ 54, who warrants them only for 25 years. *See id.* ¶ 55. In contrast to the thick-walled dry casks used by many international nuclear decommissioning projects, *see id.* ¶ 57, Holtec's "thin-wall" canisters have "only a 5/8-inch thick stainless[-]steel wall with an aluminum egg-crate structure designed to hold up to 37 spent fuel assemblies." *Id.* ¶ 56. Holtec made design changes to its canisters without the authorization of the NRC, which rendered four canisters already loaded into the ISFSI at SONGS potentially defective. *See id.* ¶¶ 60–62. The NRC declined to impose a civil fine for the failure to seek pre-authorization of the change in the design of the Holtec canisters. *See id.* ¶ 62. Independent risk assessments of the decommissioning plan and the Holtec canisters, if performed, have not been made publicly available. *See id.* ¶¶ 50, 52, 58.

Despite the lack of independent analyses and NRC oversight, the Utility Defendants began burying the canisters at the SONGS ISFSI on January 31, 2018. *See id.* ¶ 53. Workers discovered a defective Holtec canister on March 5, 2018, *see id.* ¶ 63, and the Utility Defendants admitted that four potentially defective canisters had already been filled and buried at a Community Engagement Panel Meeting on March 22, 2018. *See id.* ¶ 64. Because "Defendants have consistently used [fewer] personnel than necessary to ensure that the Holtec canisters are safely and effectively loaded into the ISFSI," *id.* ¶ 66, they have "negligently gouged and then buried twenty-nine (29) fully loaded canisters at SONGS." *Id.* ¶ 67. "[T]his gouging may lead to deeper, through-the-wall cracks," which may "be exacerbated, *inter alia*, by the presence of salt air, fog, rain, and salt water—the precise weather conditions that the canisters will be exposed to at the current location just

steps from the Pacific Ocean." *Id.* Further, "many (if not all) of the canisters were negligently scratched during transportation to the ISFSI." *Id.* ¶ 68.

On July 22, 2018, the Utility Defendants "nearly dropped a 49-ton canister full of deadly radioactive nuclear waste more than 18 feed into the ISFSI when it was caught on a quarter inch thick steel guide ring." *Id.* ¶ 69. They failed to report the incident to the NRC. *See id.* ¶¶ 70–71. On August 3, 2018, the Utility Defendants "once again lost control of a 49-ton canister full of deadly radioactive nuclear waste while it was being lowered into a below-ground storage silo," *id.* ¶ 72, which resulted in a work stoppage. *See id.* ¶ 74. The Utility Defendants informally informed the NRC on August 6, 2018, *see id.* ¶ 76, and a whistleblower reported the event at a Community Engagement Panel Meeting on August 9, 2018. *See id.* ¶ 73. As a result of the August 3, 2018 incident, "[o]n March 25, 2019, the NRC issued a 'Notice of Violation' and 'NRC Special Inspection Report' to Edison for two safety violations." *Id.* ¶ 91. The first violation concerned "a failure to make certain that safety equipment was operating," while the second was for "failure to report the safety incident to the NRC." *Id.* "[T]he NRC issued an Inspection Charter for SONGS, which found five violations that were ultimately penalized [by] the imposition of a . . . fee of $116,000 on [SCE]." *Id.* ¶ 79; *see also id.* ¶ 91.

"On August 24, 2018, the NRC issued an Inspection Report to the [Utility] Defendants," in which "the NRC determined that [SCE] had committed a Severity IV violation of the NRC's safety requirements between June 2017 and June 2018." *Id.* ¶ 85. "The violation related to the design control of field changes made to the safety equipment the [Utility] Defendants used to loan SNF into storage canisters." *Id.*

"On November 29, 2018, the NRC issued an Inspection Report to Holtec," in which the NRC "informed Holtec that it was being considered for 'Escalated Enforcement Action' for two apparent violations" related to the change in the design of the spent fuel storage casks. *See id.* ¶ 87. Plaintiff believes that the first violation relates to Holtec's "failure to establish adequate design control measures," which resulted in the defect that may have rendered the first four canisters deployed at SONGS unsafe. *See id.* ¶ 88.

Plaintiff believes that the second violation relates to Holtec's failure to provide the NRC with prior authorization of its design changes. *See id.* ¶ 89.

On July 15, 2019, after voluntarily suspending the transfer of SNF following the August 3, 2018 incident, the Utility "Defendants notified the public that Defendant Holtec was again moving SNF from wet storage to canisters[] and burying canisters near San Onofre beach." *Id.* ¶ 93. Additional canisters have continued to be buried during the pendency of this action. *See id.* ¶¶ 95–97.

## II. Procedural Background

On November 15, 2017, Plaintiff filed an action for declaratory and injunctive relief against the United States; the United States Department of Defense; James Mattis, Secretary of Defense; the United States Department of the Navy; Richard V. Spencer, Secretary of the Navy; SCE; and SDG&E, alleging a single cause of action for violation of Public Law 88-82. *See generally* Complaint, *Pub. Watchdogs v. United States ("Pub. Watchdogs I")*, No. 17-CV-2323 JLS (MSB) (S.D. Cal. filed Nov. 25, 2017), ECF No. 1. On August 30, 2018, the Court dismissed *Public Watchdogs I* on the grounds that Plaintiff had failed to establish Article III standing because "Plaintiff ha[d] not shown that the alleged future harm or diminishment of the area [wa]s 'certainly impending' or even that there [wa]s a 'substantial risk' or 'credible threat' that immediate harm w[ould] occur." Order Granting Defendants' Motions to Dismiss at 7–8, *Pub. Watchdogs I* (filed Aug. 30, 2018), ECF No. 24; *see also* 2018 WL 4153302, at *4. Although Plaintiff filed an amended complaint, *see* Amended Complaint, *Pub. Watchdogs I* (filed Sept. 28, 2018), ECF No. 25, it voluntarily dismissed *Public Watchdogs I* on July 3, 2019. *See* Notice of Voluntary Dismissal Without Prejudice, *Pub. Watchdogs I* (filed July 3, 2019), ECF No. 50.

On August 29, 2019, Plaintiff filed the instant action against SCE, SDG&E, Sempra, Holtec, and the NRC, alleging three causes of action: (1) violation of the Administrative Procedures Act, 5 U.S.C. §§ 702 *et seq.*, against the NRC; (2) public nuisance in violation of California Civil Code §§ 3479–3480 against the Private Defendants; and (3) strict products liability against Holtec. *See generally* ECF No. 1. Plaintiff also filed a motion

for preliminary injunction and temporary restraining order seeking to restrain Defendants from transferring further SNF into the Holtec canisters or storing additional spent nuclear fuel in the ISFSI at SONGS pending a full hearing on the decommissioning plan. *See generally* ECF No. 2. Plaintiff amended its motion the following day, *see* ECF No. 5, and the case was reassigned to this Court based on its relation to *Public Watchdogs I*. *See* ECF No. 16.

In response to Defendants' notification of their intent to oppose Plaintiff's request for a temporary restraining order, *see* ECF Nos. 6, 17, the Court set a briefing schedule. *See* ECF No. 18. Soon thereafter, Defendants filed motions to dismiss that raised, among other concerns, the Court's lack of subject-matter jurisdiction. *See* ECF Nos. 19, 28, 29. These concerns were echoed in Defendants' oppositions to Plaintiff's motion for a preliminary injunction. *See* ECF Nos. 36, 37.

Seemingly in response to Defendants' jurisdictional arguments, Plaintiff filed the operative First Amended Complaint, which added an additional cause of action for a public liability action pursuant to the Price-Anderson Act, 42 U.S.C. § 2210(n)(2). *See generally* ECF No. 38. The Court therefore denied as moot and without prejudice the pending motions to dismiss. *See* ECF No. 39. The instant Motions to Dismiss followed. *See* ECF Nos. 41, 42, 47.

On October 21, 2019, shortly before filing its oppositions to Defendants' Motions to Dismiss, *see* ECF Nos. 51, 52, Plaintiff filed with the NRC a 10 C.F.R. § 2.206 Petition to Immediately Suspend Decommissioning Operations at San Onofre Nuclear Generating Station Unites 2 and 3. *Pub. Watchdogs v. S. Cal. Edison Co.*, No. 19-72670 (N.R.C. filed Oct. 21, 2019), DE 1; *see also* ECF No. 54 Ex. 47. The same day, Plaintiff also filed an Emergency Petition for Writ of Mandamus with the United States Court of Appeals for the Ninth Circuit. *Pub. Watchdogs v. U.S. Nuclear Regulatory Comm'n*, No. 19-72670 (9th Cir. filed Oct. 21, 2019), DE 1; *see also* ECF No. 55 Ex. 48.

/ / /

/ / /

**DEFENDANTS' MOTIONS TO DISMISS**

**I.    Federal Rule of Civil Procedure 12(b)(1)**

    *A.    Legal Standard*

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *Id.* (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In evaluating such a challenge, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). In contrast, where the defendant challenges the factual basis underlying the allegations, the court need not accept the allegations as true and may instead make factual determinations. *White*, 227 F.3d at 1242. "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). When making such a ruling, the district

court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242).

The decision whether to grant leave to amend rests in the discretion of the trial court. *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–86 (9th Cir.1987)). Leave to amend is properly denied where leave would be futile, *id.* (citing *DCD Programs*, 833 F.3d at 185–86), such as where "the alleged facts, even if true, provide[] no basis for subject matter jurisdiction." *Id.* (citing *DVD Programs*, 833 F.3d at 185–86).

### B. Analysis

#### 1. Plaintiff's Standing

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The Private Defendants challenge Plaintiff's standing to seek injunctive relief because "Plaintiff does not have Article III standing to bring any claim because it has not suffered an injury in fact."[2] Holtec MTD at 21; *see also id.* at 21–23; Utility MTD at 19–22. The NRC also disputes Plaintiff's standing to challenge "two exemptions concerning the use of the decommissioning trust fund and insurance requirements" on the grounds that Plaintiff has failed to allege any injury-in-fact or redressability. ECF No. 53 at 9–10.

---

[2] The Private Defendants also contend that "Plaintiff does not have standing to bring a public nuisance claim because it has not alleged it has suffered a unique injury," Holtec MTD at 21, and Holtec urges that "Plaintiff does not have standing to bring a strict products liability claim against Holtec because it does not allege it suffered personal injury or incurred property damage as a result of an alleged safety-related design defect." *See* Holtec MTD at 21; *see also id.* at 22. But "[t]he requirements to allege standing are not the same as the requirements to plead injury under the substantive law." *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1038 (N.D. Cal. 2014) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1027 (N.D. Cal. 2012)); *see also Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX, 2017 WL 10543401, at *15 (C.D. Cal. Aug. 25, 2017) (noting distinction between the "special injury" requirement for public nuisance and Article III standing). Consequently, the Court addresses these arguments in the context of the Public Defendants' Rule 12(b)(6) motions. *See infra* Sections II.B.3.b.i, II.B.3.c.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992)). To satisfy the requirements of "injury in fact," a plaintiff must show that she suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Claims for declaratory and injunctive relief do not require individualized proof, thereby satisfying the third prong. *See id.* at 344.

a.    The NRC

The NRC contends that "Plaintiff lacks standing to challenge" the "two exemptions concerning the use of the decommissioning trust fund and insurance requirements," ECF No. 53 at 9; *see also* NRC MTD at 13–14. Plaintiff does not address the NRC's standing argument in its Opposition. *See generally* ECF No. 52. Under Ninth Circuit precedent, the Court therefore may consider Plaintiff to have conceded the issue. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210–11 (N.D. Cal. 2013) (granting motion to strike and concluding that the defendant had conceded that certain affirmative defenses could not be saved by amendment where the defendant had failed to respond to the plaintiffs' arguments); *see also id.* at 1210 n.7 (collecting cases).

Even if Plaintiff had not conceded its lack of standing as to the two exemptions concerning the use of the decommissioning trust fund and insurance requirements, the

Court concludes that Plaintiff has failed to establish any injury in fact. Here, Plaintiff alleges that "[t]he NRC . . . issued a series of exemptions to requests by the SONG Defendants to use the decommissioning trust funds for purposes other than decommissioning activities." FAC ¶ 39. Specifically, on September 5, 2014, the "NRC grant[ed] exemptions from 10 C.F.R. §§ 50.82(a)(8)(i)(A) and 50.75(h)(2), which allows the SONGS Defendants to use decommissioning trust funds for purposes other than decommissioning activities," *id.* ¶ 39(f), and on January 5, 2018, the "NRC grant[ed] an exemption to 10 C.F.R. § 50.54(w)(1), which requires the operator of a nuclear power plant to maintain property insurance in the amount of $1.06 billion to ensure adequate funds for decontamination and stabilization in the event of an accident." *Id.* ¶ 39(g). Among other things, Plaintiff prays for "[a] full and complete accounting of the decommissioning trust fund to ensure that the funds collected are adequate to permit the safe decommissioning of SONGS," *id.* at Prayer ¶ 4, and "[t]he appointment of an independent monitor at SONGS to provide independent oversight and accountability regarding the decommissioning taking place at SONGS." *Id.* at Prayer ¶ 6.

Although the Court concludes that the relief Plaintiff requests would redress any alleged injury, the Court concludes that Plaintiff has failed to allege any such injury resulting from the NRC's issuance of these two exemptions.[3] The NRC contends that "Plaintiff fails to show . . . that either the use of the decommissioning trust fund for other purposes represents a direct harm to Plaintiff or that the fund will be insufficient" or, regarding the insurance exemption, that "any kind of accident is imminent" or "how [Plaintiff] specifically would have to bear a pecuniary impact in such a circumstance." ECF No. 53 at 9–10. The Court agrees. *See, e.g.*, *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 954 (9th Cir. 2006) ("[The organizational plaintiff]

---

[3] To the extent Plaintiff's claim is premised on the exemptions detailed in paragraph 39 subparagraphs (a) through (e), which were granted between February 22, 1983, and December 21, 2001, the Court concludes that Plaintiff's challenge is untimely. *See* ECF No. 53 at 2–3 (citing 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 713–14 (9th Cir. 1991); *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987)).

19-CV-1635 JLS (MSB)

fails to show that its members' concrete interest is threatened by *the challenged regulation*, rather than by 'unregulated transportation of radioactive material' in the abstract. The declarations simply express undifferentiated 'concerns'—the same concerns about nuclear hazards shared by the public at large—and speculate that unregulated transportation of radioactive material in general—*not this regulation in particular*—may present unspecified threats to their health.") (emphasis in original); *Texans Against Gov'tal Waste & Unconstitutional Gov'tal Conduct v. U.S. Dep't of Treasury*, 619 F. Supp. 2d 274, 280 (N.D. Tex. 2009) (concluding that the plaintiffs did not have standing to challenge the Department of the Treasury's distribution of funds to U.S. automobile manufacturers from Troubled Asset Relief Program because the alleged injury was a generalized grievance that did not satisfy Article III's injury-in-fact requirement); *see also Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 593, (2007) ("It has long been established . . . that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government."); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) ("The . . . rationale for rejecting federal taxpayer standing applies with undiminished force to state taxpayers."). Accordingly, the Court concludes that Plaintiff has failed to allege standing as to its first cause of action to the extent it is predicated on the exemptions related to the use of the decommissioning trust funds. The Court therefore **GRANTS** the NRC's Motion in that respect.

b.     The Private Defendants

The Private Defendants argue that Plaintiff has failed to establish Article III standing because it "does not allege an injury in fact <u>to itself</u> that is distinct and palpable, or that is based on anything other than its own speculation that a harm *may occur* in the future." Utility MTD at 21 (emphasis in original); *see also* Holtec MTD at 22–23. Plaintiff responds that "a 'credible threat that a probabilistic harm will materialize is enough' to establish injury-in-fact," ECF No. 51 at 18 (quoting *Nat. Res. Def. Council v. EPA*, 735 F.3d 873, 878 (9th Cir. 2013)), and that "[t]he Amended Complaint amply details—and supports with citations—the conditions that will lead to probabilistic harm, including:

(1) the various design and manufacture defects in Holtec canisters . . . ; (2) the negligent and ongoing mishandling of the Holtec canisters by the Private Defendants . . . ; and (3) the precarious location of the ISFSI, which . . . credibly establish that probably harm will materialize." *Id.* at 19 (footnotes omitted). The Private Defendants respond that "Plaintiff's failure to allege any actual radioactive leak is a hurdle to Article III standing" and "Plaintiff's conclusory assertions regarding imminent harm are also speculative because . . . Plaintiff . . . alleges a 'speculative chain of possibilities,' and 'relies only on alleged hypothetical conditions that might lead to certain consequences.'" ECF No. 54 at 8–9 (quoting *Pub. Watchdogs I*, 2018 WL 4153302, at *4); *see also* ECF No. 55 at 8.

Defendants rely heavily on the Court's prior ruling dismissing Plaintiff's 2017 lawsuit for lack of standing. *See* Utility MTD at 20–22; ECF No. 54 at 8–9. That determination, however, was made on the basis of the allegations in Plaintiff's November 15, 2017 complaint in *Public Watchdogs I*. Whether Plaintiff adequately alleges standing for purposes of this suit depends on the allegations in its operative First Amended Complaint, which contains additional factual details. For example, in addition to alleging that it "has at least one member who lives within the zone of exposure to a catastrophic release of radioactive material from SONGS," FAC ¶ 4, Plaintiff now alleges that "Defendants have already committed grievous errors in their management and handling of spent nuclear waste," which "creates an imminent risk that deadly nuclear waste will be released, resulting in the death, injury, illness, and/or significant bodily harm to millions of California residents, as well as damage to and destruction of wildlife, agriculture, public and private property, and critical transportation infrastructure." *Id.* ¶ 2; *see also id.* ¶ 94 ("Given the SONGS Defendants' track record, the continued operation of the current decommissioning plan presents an imminent danger to the Plaintiff, the public, and the environment of Southern California."). Specifically, Plaintiff alleges that the Utility Defendants have compromised the structural integrity of the cannisters, *see id.* ¶¶ 66–68, and nearly dropped two 49-ton canisters of SNF, *see id.* ¶¶ 69–80, and that the NRC has abdicated meaningful supervision at SONGS. *See id.* ¶¶ 31–44, 85–94.

Accepting Plaintiff's allegations as true and construing them in favor of Plaintiff, as the Court must in ruling on Defendants' Rule 12(b)(1) motions, *see Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22 (1969)), the Court concludes that Plaintiff's allegations suffice to establish Article III standing. Even after the Supreme Court's decision in *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), the Ninth Circuit has "consistently held that an injury is 'actual or imminent' where there is a 'credible threat' that a probabilistic harm will materialize." *Nat. Res. Def. Council v. U.S. E.P.A.*, 735 F.3d 873, 878 (9th Cir. 2013); *see also In re Zappos.com, Inc.*, 888 F.3d 1020, 1027–29 (9th Cir. 2018) (concluding that the plaintiffs had alleged a credible threat of real and immediate harm sufficient to establish standing where hackers had stolen their personal information from the defendant's servers, thereby exposing the plaintiffs to an increased risk of identity theft), *cert. denied*, 139 S. Ct. 1373 (2019); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 645 n.49 (9th Cir. 2014) ("[A] credible threat of harm is sufficient to constitute actual injury for standing purposes, whether or not a statutory violation has occurred.") (quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002)). Indeed, the Ninth Circuit has recognized that "[t]he ability to challenge actions creating threatened environmental harms is particularly important because in contrast to many other types of harms, monetary compensation may well not adequately return plaintiffs to their original position," given that "[t]he extinction of a species, the destruction of a wilderness habitat, or the fouling of air and water are harms that are frequently difficult or impossible to remedy." *Cent. Delta Water Agency*, 306 F.3d at 950, *abrogated on other grounds by Clapper*, 568 U.S. 398.

This reasoning is equally applicable in the context of nuclear contamination. The Court therefore concludes that Plaintiff adequately has alleged Article III standing to seek injunctive relief against the Private Defendants. *See, e.g.*, *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (finding that the plaintiff had established standing where "the [challenged] dock extension risks increased tanker traffic and a . . . corresponding increase in the risk of an oil spill" and concluding that "the alleged

injury is not conjectural or hypothetical, as 'an increased risk of harm can itself be injury in fact for standing,' and nothing necessitates a showing of existing environmental harm") (quoting *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000)); *US Citrus Sci. Council v. U.S. Dep't of Agric.*, No. 117CV00680LJOSAB, 2017 WL 4844376, at *8 (E.D. Cal. Oct. 25, 2017) ("Plaintiffs have established environmental standing by showing that there is a significant risk of environmental injury [through the spread of disease from the importation of Argentine lemons] that would be caused by the Final Rule and remedied by its reversal."); *Levine v. Johanns*, No. C 05-04764 MHP, 2006 WL 8441742, at *4 (N.D. Cal. Sept. 6, 2006) (concluding that the plaintiffs had standing to assert APA claim premised on theory that the "USDA's interpretation of, or failure to interpret, the 1958 HMSA causes an increased risk of contracting food-borne illnesses from inhumanely slaughtered animals").

## 2. *The Court's Subject-Matter Jurisdiction*

Defendants also contend that the Court lacks subject-matter jurisdiction because Plaintiff's causes of action all challenge actions taken pursuant to the Atomic Energy Act of 1954 ("AEA"), 42 U.S.C. §§ 2011–2021, 2022–2286i, 2296a–2297h-13, and NRC regulations and therefore must be brought in the Ninth Circuit under the Hobbs Act, *see* Holtec MTD at 7–9; Utility MTD at 22–25; NRC MTD at 6–11, pursuant to which "[t]he court of appeals . . . has exclusive jurisdiction to . . . determine[] the validity of . . . all final orders of the [NRC] made reviewable by section 2239 of title 42." 28 U.S.C. § 2342(4). Section 2239, in turn, applies in relevant part to "proceeding[s] . . . for the granting, suspending, revoking, or amending of any license or construction permit, or application to transfer control, and . . . proceeding[s] for the issuance or modification of rules and regulations dealing with the activities of licensees." 42 U.S.C. § 2239(a)(1)(A).

The Hobbs Act is to be read broadly. *See Gen. Atomics v. U.S. Nuclear Regulatory Comm'n*, 75 F.3d 536, 539 (9th Cir. 1996). The Supreme Court has recognized that, "[i]n the absence of specific evidence of contrary congressional intent, . . . review of orders resolving issues preliminary or ancillary to the core issue in a proceeding should be

reviewed in the same forum as the final order resolving the core issue." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985).

### a. The NRC

Plaintiff alleges a single cause of action for violation of the APA against the NRC. *See generally* FAC ¶¶ 100–08. Specifically, Plaintiff alleges that "[t]he NRC's grant of the SONG Defendants' application for a License Amendment [in July 2015] was in violation of the Administrative Procedures Act," *id.* ¶ 101, and that, "[s]ince the License Amendment, Defendant NRC has periodically taken final action on various requests by the SONGS Defendants to continue the removal of SNF from wet storage and burial in defective canisters, including by accepting amendments to certificates of compliance and granting exemptions from other statutory and regulatory requirements ( . . . "Other Agency Actions")." *Id.* ¶ 102. Plaintiff alleges that the NRC "failed to fulfill the procedural and adjudicative rule-making requirements" with respect to the License Amendment and Other Agency Actions, *see id.* ¶ 104, and that "[t]he License Amendment and Other Agency Actions were contrary to and in excess of authority of law, and were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law." *Id.* ¶ 105. Consequently, "[t]he NRC . . . has acted contrary to and in excess of its authority," *id.* ¶ 106, and "in violation and contravention of obligations incumbent by operation of law or in excess of duly delegated authority." *Id.* ¶ 107.

The NRC contends that, "[b]y its own terms, Plaintiff's cause of action against the NRC is a challenge to a license amendment issued in July 2015 . . . [, a]nd the basis for the injunctive relief Plaintiff seeks against the NRC is the irreparable harm allegedly caused by the License Amendment." NRC MTD at 8 (citing FAC ¶¶ 101–06, 109). Consequently, "[o]nly the Court of Appeals may hear Plaintiff's claim that the NRC improperly granted the License Amendment, which forms the basis for its request for injunctive relief." *Id.* at 6. As for Plaintiff's allegations concerning Other Agency Actions, those challenges "cannot be bifurcated and reviewed by this Court under a separate jurisdictional theory," *id.* at 11 (citing *Lorion*, 470 U.S. at 742–43), and largely "'flow[ed] from' and occurr[ed]

19-CV-1635 JLS (MSB)

'after' the License Agreement." *Id.* at 13. Further, "the [challenged] decisions, which Plaintiff characterizes as 'exemptions enforcement actions,' are examples of the Agency exercising its discretion to develop the remedies it considers appropriate in instances where SCE may have acted inconsistently with the requirements of its license of Agency regulations," which are not exemptions or, "in any event, . . . []reviewable because [they are] committed to agency discretion by law." *Id.* at 12 (collecting cases). The NRC urges that Plaintiff's remedy is to file a petition for review pursuant to 10 C.F.R. § 2.206 or a petition for rulemaking pursuant to 10 C.F.R. § 2.802, either of which provides for judicial review before the Ninth Circuit pursuant to the Hobbs Act. *See id.* at 10–11, 13 n.4.

Plaintiff counters that the Hobbs Act does not apply to all NRC actions, such as "final orders issued in [NRC] proceedings involving exemptions," ECF No. 52 at 12 (alteration in original) (quoting *Brodsky v. U.S. Nuclear Regulatory Comm'n*, 578 F.3d 175, 180 (2d Cir. 2009)), and that the "NRC's many failures involving SONGS fall outside the Hobbs Act." *Id.* (emphasis omitted). For example, Plaintiff indicates that the NRC has granted numerous exemptions, some of which involve use of the decommissioning trust funds, *see id.* at 13, or defects in or changes to the design of the Holtec cannisters, *see id.* at 14–15, or the filing of event reports. *See id.* at 15. Finally, "the relief Public Watchdogs seeks—a temporary halt to the movement of nuclear fuel and performance of an independent risk assessment—cannot be secured in a proceeding before the NRC." *Id.* at 16–17.

Noting that Plaintiff does not dispute that its challenges to the July 2015 License Amendment is untimely and subject to the Hobbs Act, the NRC responds that "this Court should dismiss, with prejudice, for lack of jurisdiction Plaintiff's claim relating to the License Amendment." ECF No. 53 at 2. As for the Other Agency Actions, "none . . . support the Court exercising jurisdiction in this case." *Id.* First, several of the exemptions Plaintiff challenges are time-barred under the APA's six-year statute of limitations. *Id.* at 2–3. Second, "any challenge by Plaintiff to the Certificate of Compliance for the Holtec system is before the wrong court (and untimely)." *Id.* at 4. Third, "[m]uch of the conduct

that Plaintiff identifies in the Opposition relates to the Agency's approach to enforcement, which is neither an 'exemption,' as Plaintiff contends, nor subject to judicial review," *id.*; *see also id.* at 5–7, because "an agency's enforcement decision, including refusal to pursue enforcement action, is presumptively unreviewable." *Id.* at 7 (citing *Heckler v. Chaney*, 470 U.S. 821, 837 (1985); *City & Cnty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1001 (9th Cir. 2015)).

It is clear that the Court lacks jurisdiction over Plaintiff's challenges related to the July 2015 License Amendment and the Certificate of Compliance for the Holtec system, both of which are final orders of the NRC relating to the grant or amendment of a license for purposes of the Hobbs Act. *See, e.g.*, 10 C.F.R. § 72.210 (granting "[a] general license . . . for the storage of spent fuel in an independent spent fuel storage installation at power reactor sites to persons authorized to possess or operate nuclear power reactors"); 10 C.F.R. § 72.212 (limiting the general license in 10 C.F.R. § 72.210 to "storage of spent fuel in casks approved under the provisions of this part"); 10 C.F.R. § 72.214 (listing approved spent fuel storage casks, including certificates for several manufactured by Holtec); *N.J. Dep't of Envt'l Prot. & Energy v. Long Island Power Auth.*, 30 F.3d 403, 410 (3d Cir. 1994) (affirming district court's dismissal of challenges to NRC's approval of license amendment and issuance of a certificate of compliance for radioactive material cannisters for lack of jurisdiction and concluding that "[t]hese challenges cannot be maintained in the district court" under the Hobbs Act); *Skull Valley Band of Goshute Indians v. Leavitt*, 215 F. Supp. 2d 1232, 1252 (D. Utah 2002) ("Pursuant to the [Hobbs Act], the proper forum for the review of issues concerning the NRC's authority to license the proposed [privately owned] facility [for storage of spent nuclear fuel] or the propriety of such a license is the federal courts of appeals."), *aff'd*, 376 F.3d 1223 (10th Cir. 2004); *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 854 F. Supp. 16, 18–19 (D. Mass. 1994) (denying motion for preliminary injunction and dismissing for lack of jurisdiction complaint alleging that NRC violated the National Environmental Policy Act by failing to conduct an environmental impact study prior to approving decommissioning of nuclear

power plant because "the court must address NRC's decision that [the operator of the nuclear plant] did not have to amend its license in order to engage in extensive early component removal prior to NRC's approval of a decommissioning plan," judicial review of which "must rest with the court of appeals" pursuant to the Hobbs Act). Plaintiff appears to have conceded as much by filing a 2.206 petition before the NRC and an emergency petition for writ of mandate before the Ninth Circuit.[4] *See* ECF No. 54 Exs. 47–48.

As for the "exemptions from other statutory and regulatory requirements" comprising the Other Agency Actions—to the extent that they are not time-barred and that Plaintiff has standing to pursue them, *see supra* Section I.B.1.a—they tend to touch on "issues preliminary or ancillary to the" July 2015 License Amendment and the Certificate of Compliance for the Holtec system, thereby rendering the Ninth Circuit the appropriate forum pursuant to the Hobbs Act. *See, e.g.*, *Gen. Atomics*, 75 F.3d at 539 (affirming district court's dismissal of lawsuit concerning the NRC's imposition of reclamation costs against an entity without a license granted by the NRC under the Hobbs Act); *Commonwealth Edison Co. v. U.S. Nuclear Regulatory Comm'n*, 830 F.2d 610, 613 (7th Cir. 1987) (concluding that Court of Appeal had jurisdiction over challenge to the NRC's license fee regulations); *F.A.C.T.S, Inc. v. U.S. Nuclear Regulatory Comm'n*, No. 98-CV-0354E(H), 1998 WL 748340, at *2 (W.D.N.Y. Sept. 11, 1998) (transferring action to Court of Appeals for lack of jurisdiction where the plaintiff challenged the NRC's "determination that it lacks jurisdiction over certain radioactive materials located at the [subject] site," which is a "determination . . . necessarily preliminary to the type of licensing proceeding reviewable only in the court of appeals"). Were the Court to conclude otherwise, this proceeding

/ / /

---

[4] As indicated at the November 25, 2019 hearing, the Court is troubled by Plaintiff's decision to seek the same relief—a temporary cessation of the decommissioning efforts at SONGS—simultaneously before this Court, the NRC, and the Ninth Circuit. Plaintiff's scattershot approach has resulted in duplicative review of issues that may be rendered moot by the NRC's action on Plaintiff's 2.206 petition. *See Sierra Club v. U.S. Nuclear Regulatory Comm'n*, 825 F.2d 1356, 1362 (9th Cir. 1987) (expressing disfavor of entertaining judicial review of issues that may be mooted by further agency action).

would result in the "irrational" "duplication of judicial review in the district court and court of appeals, with its attendant delays." *See Lorion*, 470 U.S. at 742.

Even if the Other Agency Actions were not ancillary to matters properly before the Ninth Circuit Court of appeals, the Court concludes that it lacks jurisdiction to review those decisions of the NRC under 5 U.S.C. § 701(a)(2), which exempts from review under the APA "agency action . . . committed to agency discretion by law." The Supreme Court has clarified that this provision applies where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "[A]n agency's decision not to . . . enforce . . . is a decision generally committed to an agency's absolute discretion," *id.* at 831 (collecting cases); consequently, "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." *Id.* at 832. The Supreme Court clarified, however, that "the decision is only presumptively unreviewable," *id.*, and "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Id.* at 833. The Court intimated that an agency's decision may also be reviewable where "the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities." *Id.* at 833 n.4 (quoting *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (en banc)).

Here, the Other Agency Actions are largely "exemptions from the rules and regulations promulgated to ensure that nuclear facilities are operated and decommissioned safely." *See* FAC ¶ 31. In *Riverkeeper, Inc. v. Collins*, 359 F.3d 156 (2d Cir. 2004), for example, the Second Circuit concluded that the NRC's decision to not, among other things, change the nuclear power plant's spent-fuel storage to a dry-cask system was a denial of enforcement. *See id.* at 166 & n.11. Consequently, the NRC's "decision [wa]s presumptively not reviewable unless the presumption [wa]s overcome by one of the means recognized by *Chaney*." *Riverkeeper, Inc.*, 359 F.3d at 166. The Court concludes that Plaintiff has failed to meet this burden here. *See id.* at 166–71. Accordingly, the Court

**GRANTS** the NRC's Motion and **DISMISSES WITH PREJUDICE** Plaintiff's first cause of action against the NRC. *See Berka v. U.S. Nuclear Regulatory Comm'n*, No. 17-CV-02836 (APM), 2018 WL 7269949, at *2 (D.D.C. Dec. 19, 2018) (dismissing with prejudice complaint against the NRC where district court lacked jurisdiction under the Hobbs Act and the plaintiff's challenge was not timely pursuant to 28 U.S.C. § 2344).

### b.  The Private Defendants

Similarly, the Private Defendants contend that the Court lacks jurisdiction over Plaintiff's Price-Anderson Act, public nuisance, and strict products liability causes of action because Plaintiff is "trying to use [those] laws to challenge the NRC's final licensing and certification decisions regarding spent fuel storage at SONGS," while "original jurisdiction to review such NRC licensing activity is vested exclusively in the United States Courts of Appeals" pursuant to the Hobbs Act. *See* Holtec MTD at 7–8; Utility MTD at 22–25. "Further, even if this Court did have original subject matter jurisdiction to hear Plaintiff's claims, it would nevertheless lack jurisdiction because (1) Plaintiff did not challenge either NRC's issuance in 2015 of an amendment to the SONGS operating license . . . or the Holtec [Certificate of Compliance ("COCs")] within 60 days of the Amendment or the CoCs becoming final . . . ; and (2) Plaintiff has not exhausted its administrative remedies." Holtec MTD at 8–9.

Plaintiff responds that the July 2015 License Amendment and the Certificate of Compliance for the Holtec system are "not the basis of Plaintiff's claims against the Private Defendants" and that Plaintiff's claims are instead predicated on, "among other things, . . . Private Defendants['] . . . secret and material modifications to the existing canister design (previously approved by the NRC) without telling the NRC; . . . Holtec['s] design[ of] a product[ that] doesn't conform to its Certificate of Compliance ("CoC"); and . . . the Private Defendants['] further damage[ to] the canisters while downloading them." ECF No. 51 at 8. Further, not "everything they have done (and continue to do) is under the aegis of the NRC," *id.*, and the Private Defendants' "failure to disclose noncompliance with material

/ / /

statutory, regulatory, or contractual requirements" is actionable. *Id.* at 9 (citing *Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 901 (9th Cir. 2017)).

The Private Defendants reply that Plaintiff's challenged actions amount to "conduct taken under license, under the NRC's regulation, and encompassed by the Hobbs Act." ECF No. 54 at 7; *see also* ECF No. 55 at 2–5. Further, "Plaintiff's 10 C.F.R. § 2.206 Petition is a tacit concession that this Court does not have subject matter jurisdiction to hear this dispute," ECF No. 55 at 2, and the Court should "not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary." *Id.* at 4 (emphasis omitted) (quoting *Sierra Club*, 825 F.2d at 1362); *see also* ECF No. 54 at 7–8.

As with Plaintiff's cause of action against the NRC, *see supra* Section I.B.2.a, the Court agrees with the Private Defendants that the causes of action Plaintiff against alleges them are premised on conduct that falls under the Hobbs Act, thereby depriving this Court of jurisdiction. Plaintiff alleges that, "on July 17, 2015, the NRC granted the SONGS Defendants' request for a license amendment and permitted the SONGS Defendants[] to decommission the SONGS facility," FAC ¶ 43, and that the NRC "accept[ed] amendments to certificates of compliance" for the Holtec canisters, *id.* ¶ 102, the design of which has been changed without the approval of the NRC, *id.* ¶ 62, and is defective, *id.* ¶ 60, and of which the Private Defendants have compromised the structural integrity by negligently scratching the gouging the walls prior to burial. *Id.* ¶¶ 66–68. Plaintiff's second cause of action under the Price-Anderson Act is premised on the Private Defendants' "burying of SNF in defective canisters that are destined to fail." *Id.* ¶ 116. Plaintiff's third cause of action for public nuisance is premised on the Private Defendants' "failing to investigate and replace the substandard canisters" and "inten[tion] to store additional SNF in these substandard canisters, despite the well-known defects that render these canisters insufficient for the task." *Id.* ¶ 121. Finally, Plaintiff's fourth cause of action for strict products liability is premised on "Holtec's defectively designed canisters." *Id.* ¶ 135. Ultimately, these causes of action all trace back to actions that were taken pursuant to or

that were incidental to the NRC's issuance of the July 2015 License Amendment or the certificate of compliance for the Holtec canisters, actions that must be challenged before the Ninth Circuit pursuant to the Hobbs Act. *See supra* Section I.B.2.a.

Because the Court concludes that it lacks jurisdiction over Plaintiff's causes of action against the Private Defendants, the Court **GRANTS** their Motions and **DISMISSES WITH PREJUDICE** Plaintiff's second, third, and fourth causes of action. *See Berka*, 2018 WL 7269949, at *2.

## II. Federal Rule of Civil Procedure 12(b)(6)

### A. *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, 207 F. Supp. 3d 1107, 1114 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) (holding that "material which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss). Exhibits that contradict the claims in a complaint, however, may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) ("[Courts] are not required to accept as true conclusory allegations [that] are contradicted by documents

referred to in the complaint.'"))); *see also Nat'l Assoc. for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (holding that courts "may consider facts contained in documents attached to the complaint" in determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678–79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### B. Analysis

#### 1. Sempra

Sempra contends that Plaintiff's second and third causes of action against it should "be dismissed because it is not a proper party to the case" given that "Sempra is not a direct owner of SONGS and is not a licensee" and "there are no allegations in the FAC as to Sempra's conduct separate from it simply being the ultimate parent company of SDG&E[,] which is insufficient for liability." Utility MTD at 1 n.1 (citing *Maple Leaf Adventures Corp. v. Jet Tern Marine Co.*, No. 15-CV-02504-AJB-BGS, 2016 WL 3063956, at *6 (S.D. Cal. Mar. 11, 2016) ("As a general principle, corporate separateness insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary.") (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015))). Plaintiff counters that "[t]he Amended Complaint alleges that Sempra, as one of the SONGS Defendants, is equally responsible for the unlawful activity described therein" and "that Sempra's conduct establishes a pattern of corporate conduct relevant to its claims." ECF No. 51 (citing FAC ¶ 7 & n.3).

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). "[A]ctivities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability." *Id.* at 72 (alteration in original). But a parent company may be "directly liable for its own actions" where "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management" and "the parent is directly a participant in the wrong complained of." *See id.* at 64–65. Additionally, "the corporate veil may be pierced and the [parent company] held liable for the [subsidiary] corporation's conduct

///

when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the [parent company]'s behalf." *Id.* at 62.

Here, Plaintiff alleges that "[Sempra] is the parent company of SDG&E doing business within the state of California," FAC ¶ 7, and that "Sempra is currently under investigation for its role in the massive natural gas leak in Aliso Canyon." *Id.* n.3. Although there are many allegations pertaining to the "SONGS Defendants," *see, e.g., id.* ¶¶ 18–19, 21–26, 29–30, 32–39, 41–44, 50, 52–53, 56, 58–59, 62–69, 71–74, 76–80, 85, 93–94, 96–99, which Plaintiff defines to include Sempra, *see id.* ¶ 8, there are only passing references to Sempra in the Amended Complaint, none of which allege particular actions taken by Sempra. *See id.* ¶ 116, 119. Consequently, Plaintiff's Amended Complaint contains no allegations supporting Sempra's liability, either directly or vicariously.

Further, a review of Plaintiff's voluminous exhibits indicates that the filings and correspondence from the NRC neither mentions nor is addressed to—or even copied to—anybody identified as working at Sempra. *See generally* FAC Exs. 8, 10, 13–23, 37. Given the absence of any allegations concerning Sempra's direct involvement in the actions underlying Plaintiff's second and third causes of action or any allegations supporting the piercing of the corporate veil such that Sempra may be held liable for the actions of SDG&E, the Court concludes that Plaintiff has failed to state a claim against Sempra. *See, e.g., Saaiman v. Am. Gen. Life Ins. Co., Inc.*, No. 18-CV-596-BTM-AGS, 2019 WL 1864858, at *2 (S.D. Cal. Apr. 25, 2019) (concluding that the plaintiff had failed to state a claim against parent company under theories of direct or vicarious liability where the plaintiff failed to allege any wrongful actions taken by the parent company or any facts supporting agency or alter ego theories). Accordingly, the Court **GRANTS** Sempra's Motion and **DISMISSES** Plaintiff's second and third causes of action against it.

/ / /

/ / /

/ / /

/ / /

2. *Second Cause of Action: Violation of the Public Liability Action for Violation of the Price-Anderson Act, 42 U.S.C. § 2210(n), Against the Private Defendants*

The Price-Anderson Act provides, in relevant part:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy.

42 U.S.C. § 2210(n)(2). The Act defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident," 42 U.S.C.A. § 2014(w), and "nuclear incident" as "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C.A. § 2014(q).

Plaintiff alleges that the Private Defendants "have caused an 'occurrence' and thereby created a 'nuclear incident' and 'public liability' within the meaning of the Price Anderson Act" by "burying SNF in defective canisters that are destined to fail." FAC ¶ 116. The Private Defendants contend that Plaintiff cannot state a cause of action under the Price-Anderson Act because there has not been a "nuclear incident" as defined by the statute. *See* Holtec MTD at 9–17; Utility MTD at 13–14. Specifically, Plaintiff has not alleged that anybody has been exposed to radiation in excess of the federal dose limits, *see* Holtec MTD at 11–15, or that anybody has suffered physical harm to their person or property as a result of such exposure. *See id.* at 15–17.

Plaintiff counters that "the PAA does not require a completed nuclear catastrophe before public intervention becomes appropriate." ECF No. 51 at 10. Plaintiff urges that "[t]he PAA claim must—statutorily—be considered in light of the nuisance claim," which "allows a court to step-in and step-on a prospective nuisance." *Id.* at 12. Plaintiff contends

that it "alleges that Holtec's defective cannisters and their negligent installation will lead to 'lethal' and 'deadly' releases of radiation, which would never be allowed under any reasonable reading of federal regulations." *Id.* at 14 (quoting FAC ¶¶ 45–46). Further, "a completed radiation injury is not a prerequisite to equitable PAA relief." *Id.*

On reply, the Private Defendants note that "[n]o authority cited in the Opposition contradicts binding Ninth Circuit precedent which holds that a viable PAA [claim] requires 1) physical harm to persons and property; and 2) the release of radiation above the federal limits." ECF No. 54 at 8 (citing *In re Berg Litig.*, 293 F.3d 1127, 1131 (9th Cir. 2002); *O'Connor v. Boeing N. Am.*, Nos. CV 97-1554 DT (RCx) et al., 2005 WL 6035255, at *39–40 (C.D. Cal. Aug. 18, 2005)); *see also* ECF No. 55 at 5–8.

The Court agrees with the Private Defendants. Despite Plaintiff's arguments to the contrary, the Ninth Circuit has recognized that "[p]hysical harm to persons or property is . . . a jurisdictional prerequisite" to a cause of action under the Price-Anderson Act. *In re Berg Litig.*, 293 F.3d at 1131. Plaintiff's attempt to dispense with this requirement under the anticipatory nuisance doctrine "would be inconsistent with the Act's 'bodily injury' requirement." *See id.* (rejecting argument that the plaintiffs could assert claims for emotional distress under the Price-Anderson Act despite not having suffered a physical injury because Washington law permits emotional distress claims in the absence of physical injury). Further, "[e]very Court of Appeals that has decided the duty or standard of care issue has held that the plaintiff must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a Price-Anderson Act [public liability action ("PLA")]." *O'Connor*, 2005 WL 6035255, at *40 (collecting cases). This means that "[a]n essential element of any [public liability action] is that the plaintiff's exposure exceed the federal dose limits." *Id.* at *39 (collecting cases). Because Plaintiff alleges neither that Defendants have caused exposure to radiation in excess of the federal limits nor that Plaintiff or any of its members has suffered physical harm, *see* FAC ¶¶ 112–17, the Court **GRANTS** the Private Defendants' Motions and **DISMISSES** Plaintiff's second cause of action.

### 3. State Law Causes of Action

#### a. Preemption

The Supreme Court has recognized that "state law can be preempted in either of two general ways." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). First, "[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is preempted." *Id.* (collecting cases). Second, "[i]f Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law . . . , or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* (citation omitted).

The Private Defendants contend that Plaintiff's state law causes of action for public nuisance and strict products liability are preempted by the AEA, which occupies the field of nuclear safety. *See* Holtec MTD at 17–20; Utility MTD at 14–18. Plaintiff counters that "the source of any preemption must be the PAA specifically rather than the AEA generally" and that the Price-Anderson Act does not preempt state-law claims for plaintiffs who cannot plead nuclear incidents under the Price-Anderson Act. *See* ECF No. 51 at 15–16. Consequently, "Plaintiff is entitled to relief either under the PAA (using California tort law to supply the rules of decision) or directly under California tort law." *Id.* at 16. The Private Defendants reply that "Plaintiff fails to address *any* of [their] case law concerning preemption under the Atomic Energy Act, including law holding that nuisance and strict liability claims dealing with nuclear safety are preempted." ECF No. 54 at 2 (citing *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008); *Laine v. Weinberger*, 541 F. Supp. 599, 604 (C.D. Cal. 1982)); *see also* ECF No. 55 at 2 (citing *United States v. Manning*, 527 F.3d 828 (9th Cir. 2008); *Laine*, 541 F. Supp. at 604).

The Court finds that Plaintiff's state law claims are preempted by the AEA, which occupies the field for protection against hazards of radiation and the disposal of radioactive materials. According to Congress, the AEA was intended, among other purposes, to provide for "a program for Government control of the possession, use, and production of

atomic energy and special nuclear material." 42 U.S.C. § 2013 (c). Although recognizing the interests of the States, *see* 42 U.S.C. § 2021(a), Congress explicitly reserved to the NCR the responsibility to regulate "the disposal of . . . nuclear material as the Commission determines by regulation or order should, because of the hazards or potential hazards thereof, not be so disposed of without a license from the Commission," *see* 42 U.S.C. § 2021(c)(4), and "activities for . . . protection against radiation hazards." *See* 42 U.S.C. § 2021(k).

Here, Plaintiff's state law causes of action are predicated on potential radiation hazards that may result from the disposal of nuclear material. *See, e.g.*, FAC ¶¶ 121 ("Unless restrained by this Court, the Nuisance Defendants intend to and will continue to maintain the nuisance by failing to investigate and replace the substandard canisters, which are currently used to store SNF. Worse still, the Nuisance Defendants intend to store additional SNF in these substandard canisters, despite the well-known defects that render these canisters insufficient for the task."), 125 ("Unless the public nuisance activities of the Nuisance Defendants' remediation plan are restrained by a preliminary and permanent injunction, Plaintiffs and the citizens of the surrounding area will suffer great and irreparable injury in that additional nuclear waste will be stored in containers significantly more prone to malfunction."), 135 ("As a direct and proximate cause of Holtec's defectively designed canisters, Plaintiff and the citizens of and visitors to California have suffered and will suffer damage including, but not limited to, imminent threat of harm in the form of a catastrophic release of deadly nuclear waste."). As such, they are preempted by the AEA. *See, e.g.*, *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234, 1242 (7th Cir. 1985) ("[P]laintiffs' request for an injunction ordering the [nuclear] wastes moved elsewhere is preempted because, if granted, the injunction would stand 'as an obstacle to the accomplishment of the full purposes and objectives' of federal regulation of radiation hazards.") (quoting *Silkwood*, 464 U.S. at 248); *Pennsylvania v. Gen. Pub. Utils. Corp.*, 710 F.2d 117, 120 (3d Cir. 1983) ("Private litigants therefore may not obtain by way of injunctive relief pursuant to state law an order abating as a public nuisance, because of

public safety hazards, activity of a duly licensed nuclear energy electric generating plant."); *Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1099 (E.D. Mo. 2017) ("The allegations of the [plaintiffs]' nuisance claims fall within the purview of PAA and are therefore preempted like any other state-law claims."); *Lawson v. Gen. Elec. Co.*, 140 F. Supp. 3d 968, 974 (N.D. Cal. 2015) ("Plaintiff's second and third causes of action are preempted by Price-Anderson because they are based on the theory of strict liability.") (citing *O'Connor*, 2005 WL 6035255 at *43); *Osarczuk v. Associated Univs., Inc.*, 830 N.Y.S.2d 711, 714 (N.Y. App. Div. 2007) ("[T]he Act and Act Amendments preempt all state common-law causes of action and theories of relief which might otherwise address radiological exposure from nuclear facilities, including negligence, strict liability based on engagement in an ultrahazardous activity, and nuisance."); *Md. Heights Leasing, Inc. v. Mallinckrodt, Inc.*, 706 S.W.2d 218, 222–23 (Mo. Ct. App. 1985) ("Private litigants may not obtain state law injunctive relief against nuclear facilities for radiation hazards since public protection from radiation hazards is exclusively a federal concern."); *Marshall v. Consumers Power Co.*, 65 Mich. App. 237, 247 (1975) (concluding that action for nuisance based on radioactive hazard was preempted by the AEA). Consequently, the Court **GRANTS** the Private Defendants' Motions and **DISMISSES** Plaintiff's third and fourth causes of action as preempted by the AEA.

> b. Third Cause of Action: Public Nuisance in Violation of California Civil Code §§ 3479–3480 Against the Private Defendants

In addition to arguing that the claim is preempted by the AEA, *see supra* Section II.B.3.a, the Private Defendants contend that "Plaintiff lacks standing to bring a public nuisance claim under California law because Plaintiff has not alleged a special injury to its person property," Utility MTD at 19; *see also* Holtec MTD at 21–22, and "Plaintiff's public nuisance claim is barred by California Civil Code section 3482, which provides that 'nothing which is done or maintained under the express authority of a statute can be deemed

/ / /

a nuisance.'" Holtec MTD at 20 (quoting *Friends of H St. v. City of Sacramento*, 20 Cal. App. 4th 152, 160 (1993)); Utility MTD at 18 (same).

i.    Special Injury

Under California law, "a private individual . . . does not have a cause of action on account of a public nuisance unless he alleges facts showing special injury to himself in person or property of a character different *in kind* from that suffered by the general public." *Brown v. Petrolane, Inc.*, 102 Cal. App. 3d 720, 725 (1980) (emphasis in original) (collecting cases). "Under this rule[,] the requirement is that the plaintiff's damage be different in kind, rather than in degree, from that shared by the general public." *Id.* (collecting cases).

The Private Defendants contend that "Plaintiff lacks standing to bring a public nuisance claim under California law because Plaintiff has not alleged a special injury to its person or property." Utility MTD at 19; *see also id.* at 19–20; Holtec MTD at 21–22. Plaintiff responds that "a public nuisance that interferes with a not-for-profit organization's ability to fulfill its corporate mission (as Private Defendants' public nuisance does) can— and does—constitute a special injury for the purposes of California's public nuisance laws." ECF No. 51 at 22. "Furthermore, Plaintiff's allegations in the instant case establish that Private Defendants' conduct creates a credible risk of probabilistic harm to Plaintiff that is different in kind from the harm suffered by the general public" because "[t]he Private Defendants' conduct constitutes a public nuisance of the precise type that Plaintiff was created to prevent." *Id.* at 22–23. The Private Defendants note that "Plaintiff concedes that it has not alleged any property damage or any injury to itself [or] any of its members" and that "Plaintiff has not cited a single case for the proposition that injury to its 'organization[al] mission . . . ' is a cognizable injury under California law." ECF No. 55 at 9; *see also* ECF No. 54 at 9. Further, "Plaintiff does not, and cannot, make an argument that the public does not have an interest in government agencies and special interests following all applicable laws." ECF No. 55 at 9.

/ / /

The Court concludes that Plaintiff has failed to allege a special injury as required to maintain a cause of action for public nuisance. The Private Defendants are correct that Plaintiff has identified no authority in support of its proposition that injury to its "organization[al] mission" suffices as a "special injury" for purposes of California's public nuisance law. In the absence of contrary authority, the Court must conclude that Plaintiff's concerns are shared by "the entire community of the Southern District of California," *see* FAC ¶ 119, including "all those living or working near the temporary storage area, including the major metropolitan areas of San Diego, Irvine, Riverside, San Clemente, and others." *Id.* ¶ 122. Accordingly, the Court concludes that Plaintiff has failed to allege a special injury as required to maintain an action for public nuisance; the Court therefore **GRANTS** the Private Defendants' Motion and **DISMISSES** Plaintiff's third cause of action. *See, e.g.*, *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, 24 Cal. App. 4th 1036, 1040–41 (1994) (affirming dismissal of action for public nuisance asserted by property owners' association alleging that it would suffer special injury due to its proximity to alleged nuisance because its "proximity arguably exposes it to a higher degree of these damages, but not to a different kind altogether"); *see also Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1025 (S.D. Cal. 2013) (dismissing public nuisance claim for lack of standing where the "[p]laintiff has failed to allege sufficient facts to demonstrate a special injury").

### ii.     Section 3482

The Private Defendants also contend that "Plaintiff's public nuisance claim is barred by California Civil Code section 3482, which provides that 'nothing which is done or maintained under the express authority of a statute can be deemed a nuisance.'" Utility MTD at 18 (quoting *Friends of H St.*, 20 Cal. App. 4th at 160); Holtec MTD at 20 (same). Specifically, the Private Defendants note that the NRC certified the Holtec System as "approved for storage of spent fuel" in 10 C.F.R. § 72.214 and the construction of the SONGS ISFSI in 10 C.F.R. § 72.210. *See* Holtec MTD at 21; Utility MTD at 19. Because Plaintiff's allegations relate to activities authorized by regulation, they cannot be a public

nuisance. *See id.* (citing *Dina v. People ex rel. Dep't of Trans.*, 151 Cal. App. 4th 1029, 1053 (2007); *Friends of H St.*, 20 Cal. App. 4th at 163; *Orpheum Bldg. Co. v. S.F. Bay Area Rapid Transit Dist.*, 80 Cal. App. 3d 863, 876 (1978); *Lombardy v. Peter Kiewit Sons' Co.*, 266 Cal. App. 2d 599, 605 (1968)).

Plaintiff counters that "a regulatory scheme that 'impose[s] the design, siting, operation, and safety requirements' will not" bar Plaintiff's nuisance claim under Section 3482. ECF No. 51 at 16 (quoting *Wilson v. S. Cal. Edison Co.*, 234 Cal. App. 4th 123, 157 (2015)). Consequently, "Private Defendants must hunt for and find a statute that expressly permits them to defectively design canisters and negligently install them." *Id.*

Defendants rejoin that, "[u]nder the AEA, the NRC regulatory authority covers the field of nuclear safety, and pursuant to the statutory authority, NRC certified via rulemaking the Holtec System at issue herein, as well as the 2015 License Amendment approval for SONGS." ECF No. 55 at 10; *see also* ECF No. 54 at 10. To the extent Plaintiff attempts to avoid Section 3482 "by alleging flaws in the NRC licensing and certification processes . . . Plaintiff's remedy lies with a petition under 10 C.F.R. § 2.[2]06 and an action before the Ninth Circuit Court under the Hobbs Act – not with a public nuisance claim." ECF No. 55 at 10.

Again, the Court agrees with the Private Defendants. To the extent that Plaintiff's nuisance cause of action is predicated on the Private Defendants' actions pursuant to licenses and certificates issued by the NRC, it is barred by Section 3482. *See supra* Section I.B.2.b; *see also, e.g.*, *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 888 (9th Cir. 2001) ("Here, the Water Quality Board issued NPDES permits to the Government Defendants in 1990 and 1996. Those permits authorized the discharge of storm water containing pollutants, and there is no evidence that there was any lead-contaminated storm water runoff to the property prior to 1994 or a violation of the permits. Therefore, the district court properly granted summary judgment to the Government Defendants on the state law claims."); *SF Chapter of A. Philip Randolph Inst. v. U.S. E.P.A.*, No. C 07-04936 CRB, 2008 WL 859985, at *5 (N.D. Cal. Mar. 28, 2008) ("Case law interpreting § 3482

suggests that a nuisance claim cannot lie against a state agency that issues permits allowing the discharge of pollutants so long as the permits are issued pursuant to statutory authority.") (citing *Carson Harbor Vill.*, 270 F.3d at 888); *Union City v. S. Pac. Co.*, 261 Cal. App. 2d 277, 281 (1968) ("What is Required by a statute, including what is required by an authorized commission acting under authority of statute, cannot be a nuisance."); *see also North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 310 (4th Cir. 2010) ("TVA's plants cannot logically be public nuisances under Alabama and Tennessee law where TVA is in compliance with EPA NAAQS, the corresponding state SIPs, and the permits that implement them."); *N.Y. State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc.*, 102 F.R.D. 18, 26 (W.D.N.Y. 1983) ("[T]he mere shipment of such nuclear fuel, without more, cannot be found to constitute common law nuisance in light of the express authorization for such transportation under federal law.").[5]

The California Supreme Court has recognized that, "although an activity authorized by statute cannot be a nuisance, the *manner* in which the activity is performed may constitute a nuisance," *Greater Westchester Homeowners Ass'n v. City of L.A.*, 26 Cal. 3d 86, 101 (1979) (emphasis in original) (quoting *Venuto*, 22 Cal. App. 3d at 129); however, to the extent Plaintiff wishes to challenge the NRC's authorization of the Utility Defendants' and Holtec's alleged safety violations under these licenses and certificates, *see* FAC ¶¶ 31–44, 85–108, Plaintiff's recourse lies under 10 C.F.R. § 2.206(a). *See* ECF No. 54 Ex. 47. Consequently, the Court **GRANTS** the Private Defendants' Motions as to Plaintiff's nuisance cause of action and **DISMISSES** Plaintiff's third cause of action.

/ / /

---

[5] A decision from the California Court of Appeal, Third District, which was depublished when the Supreme Court of California granted review, supports this conclusion. *See Akins v. Sacramento Mun. Util. Dist.*, 12 Cal. App. 4th 208 ("[A] plaintiff cannot predicate a nuisance case upon the mere existence of a facility or activity which is statutorily authorized or upon anxiety caused by mere knowledge of its presence.") (citing *Varjabedian v. City of Madera*, 20 Cal. 3d 285, 292 (1977); *Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 129 (1971)), *review granted & opinion superseded*, 834 P.2d 1147 (Cal. 1992).

c. Fourth Cause of Action: Strict Products Liability Against Holtec

Plaintiff alleges a cause of action for strict products liability against Holtec, *see* FAC ¶¶ 127–35, and alleges that, "[a]s a direct and proximate cause of Holtec's defectively designed canisters, Plaintiff and the citizens of and visitors to California have suffered and will suffer damage including, but not limited to, imminent threat of harm in the form of a catastrophic release of deadly nuclear waste." *Id.* ¶ 135. Holtec argues that "Plaintiff does not have standing under California strict liability law" because "California law bars [plaintiffs] who have not suffered personal injury of incurred property damage as a result of an alleged safety-related design defect from asserting a strict liability action" and "Plaintiff does not allege that it, or any of its members, actually suffered injury to its person or property." Holtec MTD at 22 (alteration in original) (quoting *Bishop v. Saab Auto. A.B.*, No. CV 95-0721 JGD(JRX), 1996 WL 33150020, at *5 (Feb. 16, 1996)).

Plaintiff does not respond to Holtec's argument in its Opposition. *See generally* ECF No. 51. Under Ninth Circuit precedent, the Court therefore considers Plaintiff to have abandoned its strict liability cause of action. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (dismissing causes of action as abandoned where plaintiff did not oppose dismissal in her opposition); *Shull v. Ocwen Loan Servicing, LLC*, No. 13-CV-2999 BEN (WVG), 2014 WL 1404877, at *2 (S.D. Cal. Apr. 10, 2014) ("Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that the plaintiff forfeited her right to raise an issue on appeal because her opposition to a motion to dismiss failed to suggest a continuing interest in pursuing the claim and therefore "effectively abandoned" it).

In any event, Holtec is correct that, "[u]nder the product liability law of California, injury to the plaintiff from a defective product is an essential element of a cause of action." *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 790 (2002) (collecting cases); *see also Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014) ("[R]ecovery under the doctrine of strict liability is limited solely to 'physical harm to person or

19-CV-1635 JLS (MSB)

property.'") (quoting *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 482 (2002)); Restatement (Third) of Torts: Prod. Liab. § 1 cmt. d (1998) ("The rule stated in this Section applies only to harm to persons or property, commonly referred to as personal injury and property damage."). Here, Plaintiff alleges no injury to itself or its members; rather, it alleges only an "imminent threat of harm." *See* FAC ¶ 135. Accordingly, the Court concludes that Plaintiff has failed to allege a strict products liability cause of action against Holtec and **DISMISSES** Plaintiff's fourth cause of action. *See, e.g.*, *Kanter*, 99 Cal. App. 4th at 790–91 (affirming dismissal where "[p]laintiffs acknowledge that their complaint does not allege any personal injury or injury to property as a result of using defendants' products").

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the Court concludes that it lacks jurisdiction over this action and that Plaintiff has failed to state a plausible claim for relief, the Court concludes that Plaintiff is unlikely to succeed on the merits. Accordingly, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction. *See, e.g.*, *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982) (affirming district court's denial of preliminary injunction where the plaintiff "had failed to show any chance of success on the merits," which "made a determination of potential injury or a balancing of hardships unnecessary"); *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1059 (N.D. Cal. 2009) (granting motions to dismiss and therefore denying motion for preliminary injunction for failure to show likelihood of success on the merits); *see also Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1088 (9th Cir. 2015) (reversing district court's grant of preliminary injunction where there was no "serious question" going to the merits of the claim and, consequently, reversing district court's denial of motion to dismiss as to that claim); *Washington v. O'Dell*, No. 3:17-CV-1615-MMA-PCL, 2018 WL 1942372, at *10 (S.D. Cal. Apr. 25,

2018) (denying preliminary injunction when granting motion to dismiss); *Physician's Surrogacy, Inc. v. German*, No. 17CV718-MMA (WVG), 2018 WL 638229, at *11 (S.D. Cal. Jan. 31, 2018) (same); *Wallace v. Sosa*, No. 16-CV-01501-BAS-BGS, 2017 WL 469140, at *4–5 (S.D. Cal. Feb. 3, 2017) (same); *Ananiev v. Aurora Loan Servs., LLC*, No. C 12-2275 SI, 2012 WL 2838689, at *8 (N.D. Cal. July 10, 2012) (same).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 41, 42, 47). Specifically, the Court **CONCLUDES** that it lacks subject-matter jurisdiction as to all of Plaintiff's causes of action and that Plaintiff fails to allege facts sufficient to state a claim as to its second, third, and fourth causes of action. Because the Court concludes that the jurisdictional defects enumerated above cannot be cured by further amendment, the Court **DISMISSES WITH PREJUDICE** Plaintiff's First Amended Complaint. Accordingly, the Court **DENIES** Plaintiffs' Amended Motion for Preliminary Injunction (ECF Nos. 2, 5). The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: December 3, 2019

Hon. Janis L. Sammartino
United States District Judge

19-CV-1635 JLS (MSB)